IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CHRIS HAYMOND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-69-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JOANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Tim Wilborn
Wilborn & Associates, P. C.
2020-C S. W. 8th Avenue, PMB #294
West Linn, Oregon 97068

  Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Neil J. Evans
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

        Attorneys for Defendant

KING, Judge:

Plaintiff Chris Haymond brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

Page 3 - OPINION AND ORDER

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ first noted that the record was devoid of any treatment history for any condition from the alleged onset of June 1, 1998 through Haymond's date last insured of September 30, 2000. Haymond, a Vietnam veteran, first presented for medical care at a Veterans Administration ("VA") facility in December 2000, resulting in the VA finding Haymond 100% disabled for post traumatic stress disorder ("PTSD") effective March 28, 2001. The ALJ found

that Haymond did not have a medically determinable severe impairment from the alleged onset of June 1, 1998 through his date last insured of September 30, 2000. The ALJ's reasons were the lack of medical treatment and the ALJ's determination that Haymond and his wife, a registered nurse, were in a position to recognize his general problem and seek attention for it. Concerning the VA's disability rating, the ALJ stated that VA records generally accept a claimant's various assertions.

The ALJ made no step three determination on whether Haymond met or equaled a Listing.

The ALJ then made an alternative step five finding. He assumed that Haymond had a severe mental impairment before his date last insured, and consequently had limitations of not being able to work with the general public or have frequent interaction with co-workers. Based on vocational expert testimony, the ALJ found that Haymond could perform the jobs of cabinet assembler, hardware assembler, and small products assembler, and thus was not disabled under the Act.

**FACTS**

Chris Haymond, who was 55 years old at the time of the hearing, has an Associate of Arts degree in air conditioning from a junior college and has worked as a handyman. Haymond contends that he became disabled on June 1, 1998, due to depression, PTSD, back and knee pain, and poor eyesight. In his briefing, Haymond states that his primary contention is that his impairments meet or equal Listing 12.06 for anxiety related disorders.

At the hearing in October 2003, Haymond recounted his difficulties staying focused at a job and interacting with other people. This led to him being self-employed so he could control

his work schedule and interactions with others. Once or twice every three months, Haymond would turn down work or walk off a job if he expected to have difficulty with the client. Haymond's wife testified that two or three times a month, she covered for her husband by intervening with a client in difficult situations in an attempt to allow Haymond to complete the work so that he would be paid. Haymond avoids crowds and shops late at night if possible. At times he would sit on guard on the highest part of his property, looking for intruders. Haymond had been living in a large workshop behind his family's house for about four years at the time of the hearing. Haymond's wife asked him to move into the separate building because she could not tolerate his hypersensitivity and excessive worrying. Haymond's wife still did most of the shopping for him and handled all financial matters.

At the time of the hearing, Haymond was attending a weekly group therapy session at the VA. During the past year, Haymond did not leave the house except to attend these sessions. He also stopped drinking, except an occasional drink on the weekend, when he began receiving treatment at the VA. Michael Hendricks, a clinical social worker at the VA who worked with Haymond, provided the following information on February 1, 2002.

> Mr. Haymond is seen as a chronically affected veteran who suffers from Post-Traumatic Stress Disorder. He has abnormal and irrational responses to many normal situations that most people would handle with little difficulty. He has utilized avoidance as a coping mechanism for most of the past thirty-plus years. When he lived in California, he was basically a self-employed individual who could work at his own pace, not be responsible to the authority of anyone else and remain fairly isolated. Since he moved to Oregon around five years ago, he has tried one job which lasted a couple of weeks and while the position was temporary in nature, he was not asked to return. He lives in an isolated area and when he moved in he told his neighbors that he wished to have no social contacts with them. He has even been living in a separate dwelling from his family. In essence, he simply doesn't do people well. Situations that require interaction, communication and cooperation are not possible consistently for this individual.

> In addition to extreme stress and frustration problems, he has problems with anger management and will find himself embroiled in conflict in short order. Accordingly, he has learned that isolation and avoidance are simply the best avenues for him. He has ongoing problems with depression and anxiety which are directly attributable to his PTSD. Sleep disturbance is a major player along with distressing dreams which put him on edge. He has long had a deep-seated suspiciousness that borders on paranoia towards government, systems and people. When he first came here one year ago it was the first time that he tried to come here for help. He is still highly suspicious and angry about this area. These symptoms are also rooted in his PTSD. He has many other typical symptoms of severe PTSD in his emotional construction that we are trying to deal with. He is not considered employable. He simply could not function in situations where a degree of cooperativeness, interaction and direction were involved, in addition to the stress being overwhelming.

Tr. 155.

Haymond explained his lack of treatment until he went to the VA in 2000:

> Q . . . What is it you would want to say about there being no medical treatment for that extensive period of time?
>
> A  Well, basically denial of my situation and not understanding. I mean, you go along – for a period of time, I really felt that I was okay. It takes – you know, it takes my wife and other family members to bring a little light on you, and you have to really admit to yourself you've got a problem. So, I mean, I felt I was okay, the rest of the world was having a problem. Why would I need treatment in my mind?

Tr. 70.

After Haymond's application for benefits was denied, his representative provided a letter dated January 27, 2004 to the Appeals Council signed by three of Haymond's health care providers at the VA, Michael Hendricks, clinical social worker, Allan Kirkendall, licensed psychologist, and Elizabeth Davis, psychiatric nurse practitioner. The letter states:

> I initially met Mr. Haymond in February 2001. My progress notes at that time and following clearly reflect that Mr. Haymond's situation was basically the same as the February 2002 letter [quoted above]. I include a copy of some of those notes which clearly substantiate that Mr. Haymond was experiencing not

just dysfunction but significant distrust of the government at that time. I have been involved with hundreds and hundreds of Vietnam veterans over the years. Those affected and challenged with Post Traumatic Stress Disorder have suffered with this disorder for a long time. The research clearly indicates that this group of veterans have had classic symptoms that have persisted for a great many years. PTSD became more of a clinical diagnosis and issue in the 1980s as well as becoming more understood and recognized. Vietnam veterans with PTSD have been seen as having these problems since their return from the war. Though called or often perceived to be something else, these problems centered on serious/nonexistent maladjustment into society, social isolation, conflict with people, avoidance, lack of trust with system or governmental policies along with a myriad of other problems. Most of these veterans tried to overcome these after Vietnam but failed, finding their niche out of the mainstream. This niche is typically some set of circumstances where they can be socially isolated and not involved, where it is safe for them. Most typically, it starts to not work as it did and the individual continues to become more unable to function in the everyday world and studies have indicated that this disorder has progressively gotten worse. They were typically distrustful of the system to the point where they would not seek help from the government. This was clearly Mr. Haymond's case in terms of not trusting and he would go to significant lengths to avoid having any contact with a governmental agency.

  Mr. Haymond only reluctantly approached the VA for treatment in February 2001 because he was given an ultimatum by his wife. I have seen this reticence in many Vietnam veterans and it is part of their PTSD which has been longstanding in nature. . . . .

  VA found Mr. Haymond to be permanently and totally unemployable effective March 2001. This date was established because that is when Mr. Haymond made application but the VA is aware that veterans such as Mr. Haymond have been equally disabled for a significantly longer period. Given the nature of PTSD in Vietnam combat veterans, it is reasonable to assume that Mr. Haymond's condition has existed for a lengthy period of time, not only just the six months before I saw him (meaning September 2000) but much further back, probably into the 1970s.

Tr. 399-400.

## DISCUSSION

Haymond contends that the Commissioner made numerous errors in the adjudication of his claims. Under the analysis below, I only need to address one. My analysis is informed by the

black letter law that a Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests.

Haymond contends that the ALJ failed to comply with the regulations governing the evaluation of mental impairments. Haymond points to the regulation that requires the agency to rate the degree of the claimant's functional limitations in activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Because the ALJ failed to do this, Haymond contends that the ALJ had no basis on which to assess whether Haymond's mental impairment was severe at step two.

The regulation states, in relevant part:

> (a) General. . . . [W]hen we evaluate the severity of mental impairments for adults . . ., we must follow a special technique at each level in the administrative review process.
>
> . . . .
>
> (c) Rating the degree of functional limitation.
>
> . . . .
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. . . .
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None,

Page 9 - OPINION AND ORDER

one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

     (d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairments(s).

     (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . .

     (2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder.

     . . . .

     (e) Documenting application of the technique.

     . . . .

     (2) At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a.

There are two Psychiatric Review Technique Forms ("PRTF") in the record, both completed by DDS physicians in 2002 and both showing no medical disposition because of insufficient evidence. One DDS physician summarized some of the limitations noted in the record and stated, "These statements of limitation could reasonably result from Claimant's MDI [medically determinable impairment]. However, it is still not possible to assess the severity of

claimant's MDIs prior to DLI [date last insured]." Tr. 225.  In light of this concern, the VA disability rating, and the fact that a mental illness was at issue, the ALJ should have at least arranged for a psychological examination, thus allowing him to complete a PRTF based on it. He did not.  This is a failure to fully and fairly develop the record.

Moreover, the ALJ should have completed a PRTF, as required by § 404.1520a(d)(2), to aid in determining if Haymond had a severe mental impairment.  With the record before me, to find that Haymond's mental impairment was not severe, the ALJ would have to completely discredit the testimony of Haymond, his wife, Kirkendall, and Hendrick (Kirkendall's and Hendrick's chart notes were both available to the ALJ).  Although the Commissioner argues to the contrary, I am unable to locate anywhere in the ALJ's opinion where he rejected any of this evidence.

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  The court has

Page 11 - OPINION AND ORDER

the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant.  Id.  On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

Because the ALJ did not give reasons to reject the testimony of Haymond, his wife, and the three VA health care providers,[1] I will credit their testimony as true.  I see no reason to doubt the truthfulness of the testimony.  Haymond has completely isolated himself from society and even his family.  The health care providers provided detailed explanations of his psychological symptoms.

I will now turn to an examination of Listing 12.06 for Anxiety Disorders to determine if the ALJ would be required to find that Haymond meets or equals it.  I will base the analysis on the evidence seen by the ALJ and not on the January 27, 2004 letter sent to the Appeals Council. See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000) (additional evidence presented to the Appeals Council but not seen by the ALJ may not be the basis for the court to hold that the claimant is entitled to an immediate award of benefits; the case must be remanded to the ALJ for consideration of the new evidence and further proceedings).

> 12.06  Anxiety Related disorders:  In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic

---

[1] I realize that two of the health care providers are not acceptable medical sources under 20 C.F.R. § 416.913(a), but their testimony must be analyzed as lay testimony under 20 C.F.R. § 416.913(d).

Page 12 - OPINION AND ORDER

disorder or resisting the obsession or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

    A. Medically documented findings of at least one of the following:

    1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

        a. Motor tension; or

        b. Autonomic hyperactivity; or

        c. Apprehensive expectation; or

        d. Vigilance and scanning;

Or

    2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

    3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

    4. Recurrent obsessions or compulsions which are a source of marked distress; or

    5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

    B. Resulting in at least two of the following;

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

>> 3. Marked difficulties in maintaining concentration, persistence, or pace;

or

>> 4. Repeated episodes of decompensation, each of extended duration.

> Or

> C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. § 404, Subpart P, App. 1, Listing 12.06.

Haymond's PTSD fulfills factor A(5), with the VA documenting nearly hourly intrusive thoughts; violent nightmares three or four times a week; loud, unexpected noises causing Haymond to feel as if he is back in Vietnam; and Haymond often seeing what he believes is the movement of enemy soldiers. Tr. 262-63. Further, Haymond's symptoms meet at least three of the factors under A(1): (1) autonomic hyperactivity in the form of hypertension; (2) constant apprehensive expectation which caused Haymond's wife to ask him to move because of his excessive worrying; and (3) vigilance and scanning demonstrated by standing guard over his property.

Turning to part B, the regulations define "marked" as more than moderate but less than extreme. The degree of limitation "is such as to seriously interfere with the ability to function independently, appropriately and effectively." 20 C.F.R. § 404, Subpart P, App. 1, C. At a minimum, the record demonstrates that Haymond has marked difficulties in the activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Thus, Haymond's symptoms meet Listing 12.06 and he is conclusively presumed to be disabled.

Based on the testimony of Haymond and his wife, I further conclude that his disability started before his date last insured of September 30, 2000. Accordingly, Haymond is disabled under the Act.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this ____6th_____ day of April, 2006.

                                                   /s/ Garr M. King
                                                  Garr M. King
                                                  United States District Judge